Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the 11th Circuit. This is the fourth and final day of our sitting out of Montgomery, Alabama. Judge Luck, Judge Brasher, and I wish that we could have been with you in person today, but we appreciate your cooperation in holding the argument by Zoom. If we experience any technical difficulties during the argument, you have contact information for our IT team. They will get the matter resolved and we'll make sure that you get the entire, get to present the entirety of your argument. On your screen you have a timer displaying numbers in green. Those numbers will turn to yellow when you have two minutes remaining in your argument and when the numbers turn red, please conclude your remarks as efficiently as possible. Before you begin your arguments, counsel, I remind you that we have read your briefs and we're familiar with your case and so feel free to go directly into the heart of your argument. Our first case this morning is number 212578, Maria Martinez-Gomez versus U.S. Attorney General. Mr. Vasquez, you may begin when you're ready. Good morning, your honor. If it may please the court, I represent Petitioner Maria Ursula Martinez-Gomez and rioter Maylene Joselyn Diaz Martinez, your honor. The petition applied for asylum and the matter was heard and decided by the Immigration Court in Florida on May 21st, 2018. The immigration judge found the petition did not meet her burden to warrant the grant of asylum withholding of removal and or relief under the Conventions Against Torture. The immigration judge found on several grounds that she did not meet the definition of being a refugee. As the court found, she did not suffer past persecution as well as a well-founded fear of future persecution. The immigration judge on that day, your honor, relied on the 589 together with the statements that were marked as exhibit 2A, the brief testimony that was offered and the party's stipulation. And I would, it's part of the administrative record on page 48, your honor. But the immigration judge failed to make any specific findings or even mention the extensive country condition evidence that was submitted with the application for asylum other than when it was submitted for evidence, your honor. That was the only reference that was made to it. When the immigration judge made his decision, he just referenced the three articles that I said before, your honor. The 589, the declaration with the addendum to the 589 and the brief testimony that was given on, under oath, your honor. Counsel, let me ask you this. What was the particular social group that was proffered to the immigration judge by the petitioner's counsel? I don't think you represented the petitioner below. I think you're on appeal, but counsel for the petitioner before the immigration judge, what was the proffered of particular social group? Your honor, the particular social group was single mothers threatened by the Mara's gang because she refused to sell drugs for them. And there's issues to this, your honor, because if there were several things that were outlined in the 589 that were not put, there was no oral testimony given. And in the 589, there are several groups that she could have, or they could have developed, your honor. In other words, counsel could have gone in a different direction, but when it came time for the immigration judge, counsel specifically proffered the one you just mentioned, right? Yes, your honor. So when questioned by the immigration judge and the immigration judge asked, what is the PSG, your honor? That's what counsel during that hearing said was the PSG. That's a fair, what you just said is a fair way to read that part of the transcript, right? Yes, your honor. Okay. Now, when we got to the BIA, what was the argument for the petitioner argued that if I let me, let me help direct you if you can, because you may have the record in front of you. If you look at page 25 of the record, this is the notice of appeal. And you know, that part in the notice of appeal where you have to detail the reasons for the appeal. Yes, your honor. Okay. So there it reads, it's very brief. It reads the immigration judge erred in declining to hold a full hearing that the first argument you started to talk about, and to conclude that as a matter of law respondents proposed particular social group dash single Honduran mothers threatened by Mara's for refusal to sell drugs, dash was not cognizable. That was the issue on appeal, correct? That was, that was the issue that was raised by counsel, your honor, when he filed the appeal to the board of immigration appeals. Right. And then when you go to the brief on appeal, he fleshes that out in a section. So section one, starting on page four of the brief, which is page 10 of the administrative record, the heading starts Honduran single mother head of household who resist the gangs is a member of a particular social group within the meaning of the phrase in the phrase refugee and in the INA, right? Correct, your honor. Okay. So the reason I ask all this is in your brief here, you argue that there was a failure to give reason consideration to a different social group, and that is single mother head of household, right? That is correct, your honor. Was that raised properly before the IJ and before the BIA? I would say it would have been raised properly before the IJ, your honor, because it was part of the 589 and part of what she even said, even in her credible fear, your honor. So she's been consistent even when her first interaction with immigration, with customer border patrol, she's been consistent as the reason why she fled to the United States and was seeking asylum, your honor. Right. So you would agree with, at the very least, though, you would agree with me that that the single mother head of household was not raised before the board. You would agree with that? I would agree, your honor, that it was not. And I was not counsel of record. And that's why I start off by saying that, counsel, I know, and you've done an excellent job before us. So I in no way wanted to intimate that you did anything wrong before the board or the immigration judge. Let me ask you this, though. Even taking it on its face, I understand that your position is her application could be read that way. But counsel, it seems to me that you're very experienced doing immigration cases. Is that fair? That is correct, your honor. Okay. As I understand it, I did not practice in front court. But as I understand the way it works is an application is filed. Oftentimes there's testimony. And then once you get to a part of the hearing, the immigration judge regularly asks where counsel checks that box for a particular social group. The immigration judge is told or required by the BIA to say, tell me the specific particular social groups you are relying on in the case. Is that normally how it works where the IJ asked to get it so that the IJ has exactly what the right particular social group is? That is correct, your honor. When the 589 is filed, even when the petitioner or the respondent says that, when the judge asks what form of relief are you going to be relying on, the judge asks what is your PSG as a basic analysis as to where this case is going and whether the respondent or the petitioner has an argument for this problem. And the reason for that, I imagine, is a few reasons. One is that sometimes the petition is filed pro se, but someone's represented by counsel when it gets to the hearing. And so things may change or be narrowed by the time of the hearing. The other reason I imagine, and again, correct me if I'm wrong, is that strategies might change by counsel in terms of what they do and the evidence that's presented at a hearing versus in a petition. And also just that there's a point at which counsel says, this is what my claim is. Because on the form, it doesn't actually ask you what the particular social group is. It just has you check the box, right? That is correct, your honor. And as you stated, your honor, strategies may change. From a practitioner standpoint, when we come in contact with a respondent or a petitioner, we might have limited information at that time. It's not until we get the evidence that then we could flesh out and say, okay, this sounds like a reasonable PSG based on the current definition. And then we present that case. And that may change by the time that we get to the actual individual hearing or merits hearing, your honor. Right. Because you have to file this thing in a year under the deadline. And once you get the evidence and flesh it out and start to interview witnesses, your understanding of the claim may change a little bit by the time you get to a hearing a year or two later, right? That is correct, your honor. And with asylum, there may be changed circumstances. There's a lot of moving parts with asylum claims, your honor. So yes, a PSG may morph and also depending on case law, your honor. In this particular matter, matter of AB, which was addressed by the BIA. By the time the BIA made this decision and basically affirmed and adopted the decision by the when this case was decided by the immigration judge, matter of B was still had not been decided. But they cited, they cited and it begs the question, your honor, whether how much weight did the BIA give matter of AB? Let's flesh that out a little bit, because as I understand the BIA's order, there's two parts to it. Sentence one is we affirm and adopt the IJ. And as you noted, the IJ didn't mention or rely on AB because AB hadn't come out yet. The second sentence says, moreover, there is now some case law that's come out in AB that further supports the conclusion. Is that a fair reading of the board's order? It affirmed and it adopted the decision. But the question that I put before the court is because matter of AB had been decided and gang violence was now, you know, even in the worst position that it was prior to AB, as far as the PSG or anything related to it, did it give this decision by the IJ any thought? Did it look through the evidence? Did it afford it, you know, since it's foreclosed by matter of AB? So furthermore, and this is furthermore, it's, you know, we're deciding it based on the new president, which presidents, which is matter of AB. Well, let me ask you this question, Mr. Vasquez, what difference does the attorney general's reversal of matter of AB make in this case? How is it relevant? I think it is relevant, Your Honor, because we're talking about gang violence, matter of AB foreclosed gang violence and domestic violence as possible PSGs to be able to apply for asylum. This is just one of the issues that are in this, in this whole asylum case, Your Honor, that I'm trying to flesh out and present before the court, Your Honor. But I believe that it has, it has, it has a strong, a strong effect on the decision itself and could have been different had matter of AB not been the case that was decided right at that time, Your Honor. So you're saying, I just want to make sure I understand that because I do think that's important. So you're not saying that the BIA would necessarily have decided this differently in light of the fact that they, the attorney general has changed positions. You're saying that the fact that the attorney general has changed positions might lead the BIA to change. Is that, I mean, is that what you're saying? And that's yes, Your Honor, because that's what we're seeing today, how the BIA and even our immigration courts are changing positions as far as how they're deciding these cases that were originally just being denied because matter of AB say, said you don't have an argument for asylum. Thank you, Mr. Vasquez. Counsel for the government, you may begin when you're ready. Thank you, Your Honors. May it please the court, Jessica Lesnau on behalf of the attorney general. The court should deny the petition for review because substantial evidence supports the applications for asylum and withholding of removal and a violation or error, due process violation or error has not been demonstrated. So substantial evidence supports the denial of asylum and withholding of removal because petitioner failed to demonstrate past persecution or a well-founded fear of future persecution on account of a protected ground. In particular, this really isn't as I, as I read the brief and please correct me if I'm wrong. As I read petitioner's brief, this isn't an argument that there is an evidentiary deficiency on the particular social group that was alleged. As I read counsel's brief, it's that there was a failure to consider a separate particular social group completely at all by the immigration judge and then later by the board in adopting the immigration judge's order. And it's that error that needs to be corrected and we need to send it back for consideration of that claim. Is that, is that a fair understanding of the brief as argued here? I, I think you're correct in that regard. In addition to petitioner's arguments that the immigration judge didn't give reasoned consideration in general, but as to the petitioner's additional particular social group now being articulated, as we mentioned at page 20 of our brief, first, this really isn't materially different from the particular social group that she, that she did articulate. That is the new one is not materially different. And as your honors noted, it was never raised before the immigration judge nor before the board. So the court. Counsel's argument, counsel's argument though, is that because of the unique procedural posture of this case and it's one that I haven't seen yet before, but I'm actually, I'm sure it's common. I just haven't seen it where the, the application is adopted wholesale as the testimony. The application itself suggested that single mother head of household was the basis for which she was persecuted. And because of that, there was a failure to give reasoned consideration. I think that I hope I do justice to opposing counsel's claim, but I think that's the argument he is the procedural posture of this case is not exactly unique. This is, this was done pursuant to regulation and existing board precedent. And the immigration judge followed those procedures is what the record reveals. Petitioners counsel articulated a particular social group on the record. And then the record reveals that DHS department of Homeland security argued for on the basis of that particular social group, a discussion ensued on the record between counsels and the immigration judge, at which point Mr. Mendez of all, who was former counsel for petitioner argued that an asylum case must be heard by the judge. So in other words, he was countering the department of Homeland security suggestion that the application should be pretermited and the judge concurred. But in order to focus the proceedings, he suggested or stated that if the parties wish they could swear to the contents of the asylum application. So, so that is what happened. And the board or the immigration judge cited the board's precedent and matter of fact, and I understand that on the due process issue, I'm less concerned about that. And again, I'm only speaking for myself. Well, when I guess the implications of that are, is that you take the application as it sits in here, the application referenced a single mother head of household as, as a reason or a basis for why she says that she's persecuted in her application. And so what counsel is stating is the, at that point, the, the, the immigration judge, I guess, was required to give reason consideration to that social group. In addition to the one that was articulated, can you, can you respond to that argument? Well, I think that to the extent that particular social group was included in the 589 application, as you noted in your discussions earlier, when it came time to articulate the exact delineation of the particular social group on the record petitioners, then counsel, Mr. Mendeza ball. And I believe this was at page one zero nine of the administrative record in the transcripts that her only particular social group is the one that the judge then went forward on. So there was no further, there was no further question or, or suggestion that another particular social group also be considered. And again, it, it wasn't raised before the board. So to the extent that he's now arguing that this particular social group should be considered or that it, it wasn't fully considered the judge did proceed to conduct an analysis of petitioners claims and the particular social group that she raised, which was single mothers who have been threatened by the Morris gang. So the judge, the record shows that the judge went, went through based on the evidence in her application and the supplementary materials and gave reason consideration to, to the particular social group. If this wasn't raised before the board, are we allowed to analyze it in the first instance or in the, or, or it not having been raised before the board, are we allowed to raise it? Are we allowed to consider it? Right? No, I mean, the, it's not exhausted before the board. It's not exhausted before the agency that is. And, and then again, as we also know in our brief the board's precedent requires that an exact delineation of the proposed particular social group be raised before the immigration judge. And as part of its conclusion, the part of the IJ's conclusion that that this particular social group was not cognizable. Did the IJ rely on matter of AB in any of its forms one, two, or three? No, your Honor. And I think there are passing references throughout the briefing in this case to matter of AB insofar as this briefing was conducted post matter of AB two, but pre matter of AB three, which came down in June and in matter of AB three at the, at the end, the attorney general has, has directed immigration courts to refer or to rely upon the board's pre-existing precedent that is pre matter of AB one, which came down in June, 2018. And that's exactly what the immigration judge did. Which is exactly what the IJ did here, right? The IJ relied on that. Right. Correct. Matter of MVG and matter of WGR, those were, that was the existing precedent on particular social group before matter of AB. And let me ask you this, this, and that may answer this question. So I've been in other immigration appeals, recent immigration appeals, where the department of justice has filed a motion just to remand BIA because of the, the new opinion that came out in June. Any, anything you can tell us about how the department is making the determination about which appeals need to go back to the BIA for a reconsideration versus which ones don't and why this one would be one that you didn't need to reconsider? Certainly. I think the answer to that is simple where, where the agency relied on matter of AB as the basis of its determination, we would be directed to remand that case. And that is not what happened here. And while your honors may have mentioned previously that matter of AB was cited in the board's determination, that, that wasn't the basis of the board's determination. They adopted and affirmed the immigration judge's decision, which as we discussed, did not rely on matter of AB. And then the board also mentioned since the immigration judge's decision came down, precedent matter of AB was, was set forth and that also supports the immigration judge's claim. So again, there's not the basis. Counsel, let me ask you this. So as I understand, imagine none of the ABs existed. So we're in a pre AB world, which is essentially where, where AB three puts us, as I understand it, even in that time in that world, you still had to show with a particular social group, particularity, meaning that it was not amorphous and that it wasn't overbroad. You had to show societal acceptance. In other words, that society accepted that as a particular social group, and you had to show make additional findings. In other words, there were three things that you had to find that didn't change from AB before and AB after all AB did is add that sort of exceptional circumstances language that the attorney general was concerned about an AB three, right? That that's correct. Your honor, MEVG. Well, going back to the board's precedent, beginning with matter of Acosta in 1985, and then reiterated by matter of AG, I'm sorry, matter of MEVG and WGR in 2014, the board really laid the framework for defining particular social groups. And then in matter of AB and the matter of AB three, in particular, the attorney general has expressed concern with potential, the potential for wholesale negation of claims related to gang violence or the concerning language resulting from the unable, unwilling, or complete helplessness standard. And that was not a finding that was raised. That was not a finding made in this case. And so again, AB three is inapplicable here in that regard. Here in other words, the IJ went through those same three factors that the attorney general has now said you have to go through individually, even in gang violence cases, right? That's correct, your honor. If we were to agree that the particular social group of single mothers was properly identified, would that qualify under that preexisting precedent you and Judge Locke have been talking about? If it, if it was, I'm sorry, if it was a cognitive... Would a particular social group of single mothers qualify if it was properly preserved as a particular social group under the precedent we've been discussing? I see. And again, this, this, like we've argued in our brief, we do not think that that particular social group, if, assuming arguendo, it were considered, is materially different from that which, which petitioner has already put forth and which was analyzed by the immigration judge and the board. So likewise, that particular social group is not sufficiently socially distinct or particular so as to meet the requirements under matter of the board's precedent in MEVG or WGR. In other words, it's too overbroad. It would apply to too many people, right? Correct, your honor. It's, it's too overbroad, too amorphous, doesn't have the discrete definable boundaries, and there's not a clear benchmark for determining who, who's in and who's out, encompasses broad swaths of under end society. And I, I would also like to note that even setting aside the particular social group issue in this case, which, which is dispositive, the court does not have to get to that because the immigration judge made the determination that petitioner did not demonstrate she suffered past persecution, and petitioner does not challenge that as, as they know in their briefs, and also that petitioner didn't have a well-founded fear of future persecution. Setting aside the, the particular social group analysis, so on those two bases, that, that is, that was a sufficient dispositive ground on which to deny the asylum application and on which the court could deny the petition for review. How, explain to me how the, and, and you're right, we may not get to this, but I'm, I'm, how is the single mother's social group less cognizable than the married women in Guatemala who are unable to leave their relationship social group that was addressed in matter of ARCG, which I perceive the overruling of AB to kind of take us back to? What, what's, what about those is different? Well, I think matter, the, the particular social group raised in matter of ARCG is not the particular social group that was raised in this case. And like the judge expressed, this case, the particular social group here is not sufficiently distinct, not sufficiently particular. And in matter of ARCG, and what was later concerning about matter of ARCG was that, that particular social group was, was not addressed under all of the MEVG criterion. So the board recognized in the past, that could be a particular social group under matter of ARCG. And you're correct that we are back there. That is not the particular social group that's raised. I realize it's not exactly the same, but I guess I'm trying to figure out why it's, why it's sort of materially different where we would say, look, even though the board's precedent goes back to that, recognizing that as a social group, there's something different about this one. Well, I would point the court to the court's own pre matter of AB precedent in analyzing particular social groups, similar to the one that's proposed here, where the court has said that social groups like Honduran women unable to escape gangs is not sufficiently particular, not sufficiently distinct. That was Hernandez Guevara, which we've cited in our brief. And this case also aligns with the, with the court's prior precedent in Perez Zatino and its prior analysis of the particularity and social distinction aspects of a particular social group. Yeah. And I guess that goes to, I mean, maybe that's the answer to my question. I mean, is it, is the thing that makes the social group that was alleged here, not cognizable, the inclusion of the gang aspect, but for the inclusion of the gang aspect, would we have a very different social group that potentially was cognizable? I see what you're saying. I see that my time has elapsed. May I proceed answering your question? Yes, you may. I think that the gang could be considered as a separate aspect of this PSG, but it's not what the immigration judge addressed, nor what the board of immigration appeals addressed. The particularity and the social distinction aspects of this group really have more to do with the single Honduran mothers and those who've been threatened by the Mara gang. I mean, it's hard to distinguish members of society in Honduran society who have not been terrorized by gangs in Honduras. That is almost the entirety of the Honduran population. And it is certainly qualified, but a single mother's aspect, but single mothers is still amorphous and overbroad, is our argument. It could include women of all ages, ethnicities, as we argue in our brief, and that is why it lacks those definable boundaries. Thank you, counsel. Mr. Vasquez, you have five minutes for rebuttal. Yes, Your Honor. Going back to the matter of ARCG, because we're having this discussion, whether this PSG meets the definition, and I would argue that it's very similar. We're not talking about Honduran women in general. We're talking about single mothers, much like matter of ARCG said, married or women that are in a relationship that are unable to leave a relationship, it's very similar. It's not overbroad. It's saying single mothers that are threatened by gangs for sell drugs or whatever reason. So it's a distinct group. It's recognizable. The society could tell this is a single mother, maybe with children, maybe not. Mr. Vasquez, part of the problem, though, is the argument that you've made on appeal is not that the IJ or the BIA got wrong under its case law or under its criteria, the PSG that was actually brought up before the immigration judge. The argument you made on appeal is that the immigration judge and the BIA failed to give reasoned consideration to a different particular social group that is single mothers out of household. So you may be right or maybe I just I don't know, because maybe the legal situation is different than it was at the time. But I just that doesn't seem to be the argument that's before us today. It's not, your honor. But when we started talking about what matter AB and what impact and now where do we go after matter of AB, then the board has recognized that as that's that's a good PSG. It meets the definition, your honor. So that's why I was going back to that, because it was brought up, your honor. But, you know, even beyond that, your honor. There was no consideration where there there was a pattern of practice analysis, your honor. All the country conditions were not even considered to see is this is this a pattern on that's currently in Honduras. And did we even consider it to make to see if there is counsel? Can you show me anywhere in the in the transcript from the IJ decision or any motion or memorandum that was filed before the IJ or the BIA where there was a pattern of practice claim that was alleged? It was only it was only raised before this court, your honor. Right. I think that's that to me is part of the issue is we're dealing with that for the first time and it's hard for me and I'm only speaking for myself to find a failure of recent consideration on something that the IJ was not asked to consider. And so I think that that's that's where I'm having trouble getting to where you are, counsel. And I and I fully understand that, your honor, because, like I said, your honor, I was in the attorney of record that I fully honor. We fully understand that, counsel. But, you know, as as the court has noted, there are many cases that have been, you know, remanded back. I had another case before the 11th, you know, before this court that was remanded back. And this was not a case that that really, you know, I guess is because the reliance is. The immigration judge, which is the only detailed decision from a court, you know, made the decision prior to matter of a B. What we don't like in our race again, your honor, what we don't know is what a reliance for effect did that the BIA give to matter of a B in making this decision and would it have been different? Would it have been a further analysis, your honor, other than just affirming and adopting decision as it was in a two page decision, your honor? But turning to the just quickly with respect to the fear of future persecution, which, as I understand it, was now explained was an alternative ruling to particular social group. Am I correct that the evidence was that the petitioner had not been threatened since she left Honduras? That is correct. Was that was what what the what the petitioner stated, your honor, and and and what when she had before the judge, your honor? Thank you, Mr. Vasquez. Thank you. That would be that would be all for me on it. Thank you for allowing me to be before your court, your honor, and argue this case before you. Thank you to both both counsel for your helpful arguments.